UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:20-CV-00141-HBB

**KIMBERLY PATTON**                                                                          **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION[1]**                              **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Kimberly Patton ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 15) and Defendant (DN 21) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and that judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13). By Order entered March 11, 2021 (DN 14), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

1 Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

FINDINGS OF FACT

On September 12, 2016, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 16, 360-63, 364-71). Plaintiff alleged that she became disabled on January 3, 2015, as a result of: stroke-memory loss; weakness in both legs; heart condition; double vision; heart arrythmia; leaky heart valve; high blood pressure; anxiety; and depression (Tr. 16, 134, 152, 400). The applications were denied at the initial level on March 10, 2017, and at the reconsideration level on May 1, 2017 (Tr. 169, 170, 171, 172).

On September 6, 2018, Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a video hearing from Nashville, Tennessee (Tr. 16, 67). Plaintiff and her counsel, Sara Martin Diaz, participated from Owensboro, Kentucky (Id.). Tina Stambaugh, an impartial vocational expert, testified during the hearing (Id.).

On March 26, 2019, the ALJ conducted a supplemental video hearing from Nashville, Tennessee (Tr. 16, 42). Plaintiff and her counsel, Sara Martin Diaz, participated from Owensboro, Kentucky (Id.). Tina Stambaugh, an impartial vocational expert, testified during the supplemental hearing (Id.).

In a decision dated May 17, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 16-29). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 3, 2015, the alleged onset date (Tr. 18).

At the second step, the ALJ determined that Plaintiff has the following severe impairments: migraine headaches, asthma, recurrent arrhythmia, vascular insult to the brain, neurocognitive decline, depression, and anxiety (Tr. 19). The ALJ also determined that Plaintiff has the

following non-severe impairments: complaints regarding her back, obstructive sleep apnea, hypertension, and visual problems (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.). The ALJ indicated that her review of the listings included impairments in sections 3.00 Respiratory Disorders, 1.00 Musculoskeletal System (including Disorders of the spine), 4.00 Cardiovascular System (including Listing 4.05 Recurrent arrhythmias), 11.00 Neurological (including Listing 11.04 Vascular insult to the brain), and 12.00 Mental Disorders (including Listings 12.02, 12.04, and 12.06) (Tr. 19-21).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she: should never climb ladders/ropes/scaffolds but may occasionally climb ramps/stairs; may occasionally balance, kneel, stoop, crouch, and crawl; should avoid concentrated exposure to extreme temperatures, fumes, odors, dusts, gases, poor ventilation, and vibration; can have exposure to moderate noise; should have no exposure to hazards such as moving, mechanical parts or unprotected heights; can understand, remember, and carry out simple, routine tasks involving occasional interaction with coworkers, supervisors, and the public; can maintain concentration, persistence, and pace in 2-hour intervals throughout the 8-hour workday; and can adapt to expected, predictable changes (Tr. 21). Additionally, at step four, the ALJ considered the above RFC as well as testimony from the vocational expert and found that Plaintiff is unable to perform any past relevant work (Tr. 27).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 28-29). The ALJ

found that Plaintiff can perform other jobs that exist in significant numbers in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 3, 2015, through the date of the decision (Tr. 29).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 342-43). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the

evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

>    3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?
>
>    4)   Does the claimant have the RFC to return to his or her past relevant work?
>
>    5)   Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Prejudgment Remand

1. Arguments of the Parties

Plaintiff seeks a prejudgment remand, pursuant to sentence six of 42 U.S.C. § 405(g), as to 148 pages of "new" and "material" medical evidence concerning her heart condition during the time period in question (DN 15-1 PageID # 4739-40). Plaintiff contends this evidence is "new" because it concerns doctor's visits and testing that occurred between April 29, 2019 and August 27, 2019, which is after the ALJ conducted the supplemental hearing on March 26, 2019 (Id.). Plaintiff asserts that this evidence is "material" as it demonstrates she suffered from a second severe heart condition (Id.). Plaintiff explains that the only severe heart condition the ALJ found was "recurrent arrhythmia" (Id.) (citing Tr. 19). This new evidence purportedly demonstrates "severe mitral valve stenosis" (Id. at PageID # 4740). Although Plaintiff submitted this evidence to the Appeals Council, she indicates it chose not to consider or exhibit this evidence in connection with her request for review of the ALJ's decision (Id.). Plaintiff argues "[b]ecause this evidence is both new and material and good cause existed for why it was not submitted to the ALJ, this case should, in the least, be remanded so that this evidence can be properly considered" (Id.).

Defendant suggests that Plaintiff has merely asserted that the evidence is "new" and "material" and that she had "good cause" for not submitting the evidence to the ALJ (DN 21 PageID # 4917-18). Defendant contends that Plaintiff's arguments are skeletal and should be deemed waived (Id.) (citing Gragg v. Ky. Cabinet for Workforce Dev., 289 F.3d 958, 963 (6th Cir. 2002)). Alternatively, Defendant argues that Plaintiff has not satisfied her burden as to the three requirements for granting a sentence six request (Id. at 4917-19). For example, Plaintiff has made a bare assertion that these records—which merely set forth a diagnosis—are "material" because they identify a second heart condition (Id.). But a diagnosis alone is not enough to demonstrate there is a "reasonable probability" that the ALJ would have reached a different disposition of the claim if she had the opportunity to consider this evidence (Id.). Defendant also points out that Plaintiff has also failed to show "good cause" for her not acquiring and presenting this evidence to the ALJ (Id.). Defendant notes that Plaintiff has made a general assertion that she was unable to obtain and submit these medical records previously (Id. at PageID # 4918-19).

2. Applicable Law

"A district court's authority to remand a case . . . is found in 42 U.S.C. § 405(g) . . . ." Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006). The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence six-remand)." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).

Under sentence six of 42 U.S.C. § 405(g), the Court does not address the correctness of the administrative decision. Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991), Hollon, 447 F.3d at 483. "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding." Melkonyan, 501 U.S. at 98. The party seeking this type of remand has the burden of demonstrating that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g).

The Supreme Court of the United States has explained that evidence is "new" only if it was "not in existence or available to the claimant at the time of *the administrative proceeding*." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); see Melkonyan, 501 U.S. at 98 (indicating that evidence is "new" if it was not available to the claimant at the time of the administrative proceeding). The Sixth Circuit uses "administrative proceeding" and "hearing" interchangeably in its discussion of the applicable law. See e.g. Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). Thus, in assessing whether the evidence is new, the issue is whether the medical records existed or were available to Plaintiff at the time of the administrative hearing.

Evidence is "material" only if there is "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." Ferguson, 628 F.3d at 276; Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001); Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). Notably,

evidence is not considered material if it merely depicts an aggravation or deterioration in an existing condition. Sizemore, 865 F.2d at 712.

"Good cause" is demonstrated by showing "a reasonable justification for *the failure to acquire and present the evidence for inclusion in the hearing* before the ALJ." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (emphasis added). "Good cause" can also be "shown if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." Koulizos v. Sec'y of Health & Human Servs., No. 85-1654, 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986) (citing Wilson v. Sec'y of Health & Human Servs., 733 F.2d 1181 (6th Cir. 1984) and Willis v. Sec'y of Health & Human Servs., 727 F.2d 551 (6th Cir. 1984)). Thus, "good cause" may exist when the evidence was not available at the time the ALJ conducted the administrative hearing. For example, in Wilson, the medical evidence concerned treatment the claimant received months after the administrative hearing. 733 F.2d at 1182-83.

3. Discussion

The Court will begin by addressing whether the evidence is "new." As explained above, the issue is whether the evidence existed or was available to Plaintiff at the time of the administrative hearing. At issue are medical records from the Owensboro Health Medical Group Cardiology, dated from April 29, 2019 to August 27, 2019 (DN 15-1 PageID # 4745-4892). The ALJ conducted the administrative hearing on September 6, 2018, and the supplemental hearing on March 26, 2019 (Tr. 42, 67). Thus, all these medical records post-date the supplemental hearing and are considered "new" evidence under applicable law.

The Court will now address the question of whether the evidence is "material." Notably, 68 pages of the medical records are dated April 29, 2019 to May 15, 2019 (Id. at PageID # 4824-92). These pages predate the ALJ's decision dated May 17, 2019 (Tr. 16-29), and they indicate: on April 29, 2019, Dr. Ali Salah performed a preoperative cardiovascular examination and schedule certain diagnostic testing—prior to Plaintiff undergoing bariatric surgery—because Plaintiff had complained of dyspnea on exertion and chest pain, unspecified type (Id. at PageID # 4863-92); on May 13, 2019, Plaintiff underwent a transthoracic echocardiogram that revealed mildly thickened mitral valve leaflets, moderate mitral regurgitation, moderate to severe mitral valve stenosis (mean gradient 13 mmhg), but an estimated ejection fraction of 55 to 60% (Id. at PageID # 4848-62); and on May 15, 2019, Plaintiff had a normal electrocardiogram (Id. at PageID # 4824-36) and her echo exercise stress test was rescheduled because of an insurance problem (Id. at PageID # 4837-47, 4846). While this medical evidence indicates that Plaintiff was diagnosed with moderate to severe mitral valve stenosis, it does not include an objective assessment of Plaintiff's exertional capacity. Considering the absence of such information, the Court concludes that Plaintiff has not demonstrated a reasonable probability that the ALJ would have reached a different disposition if presented with this new evidence. See Ferguson, 628 F.3d at 276; Foster, 279 F.3d at 357; Sizemore, 865 F.2d at 711.

The other 78 pages of medical records are dated from May 23, 2019 to August 27, 2019 (Id. at PageID # 4745-4823). These pages post-date the ALJ's decision dated May 17, 2019 (Tr. 16-29), and they indicate: Plaintiff participated in the echo exercise stress test (treadmill) on May 23, 2019, but—after exercising only for 6 minutes and 38 seconds—she discontinued secondary to complaints of dyspnea and leg fatigue (Id. at PageID # 4790-4823, 4798); on August 19, 2019,

Dr. Salah conducted a follow-up office visit during which he discussed the results of the above mentioned tests and scheduled a transesophageal echocardiogram to further explore the mitral valve stenosis (Id. at PageID # 4767-89); on August 27, 2019, Dr. Salah conducted another follow-up office visit and noted she was currently asymptomatic and made recommendations should she undergo the bariatric surgery (Id. at PageID # 4745-66). This medical evidence concerning severe mitral valve stenosis relates back to Plaintiff's condition before the ALJ issued her decision on May 17, 2019. However, noticeably absent is an objective assessment addressing the impact that this condition had on Plaintiff's exertional capacity. Considering the absence of such information, the Court concludes that Plaintiff has not demonstrated a reasonable probability that the ALJ would have reached a different disposition if presented with this new evidence. *See* Ferguson, 628 F.3d at 276; Foster, 279 F.3d at 357; Sizemore, 865 F.2d at 711.

For the foregoing reasons, the Court concludes that Plaintiff is not entitled to a prejudgment remand, under sentence six of 42 U.S.C. § 405(g), as to the medical evidence discussed above.

Finding No. 5

1. Arguments of the Parties

Plaintiff raises two challenges to the ALJ's RFC determination set forth in Finding No. 5 (DN 15-1 PageID # 4736-39, 4740-42). First, Plaintiff contends that the ALJ's RFC determination failed to properly recognize the impact of Plaintiff's two strokes (Id. at PageID # 4736-39). Plaintiff contends that the two strokes caused multiple cognitive (aphasia and memory) and physical (visual field deficit on the left, blurred and double vision, migraines, and bilateral weakness and pain in the arms and legs) limitations on her ability to work and her level of absenteeism (Id.). Plaintiff believes her RFC is less than sedentary (Id.).

Next, Plaintiff argues that the ALJ failed to accept her testimony as fully credible and failed to state sufficient reasons for doing so (Id. at PageID 4740-42). Plaintiff asserts that the 4,600 pages of medical records reflecting hospital stays and office visits with her treating neurologist, primary care physician, eye doctor, cardiologist, and mental health provider depict a serious decline in her physical and mental conditions (Id.). Plaintiff claims that her testimony corroborated that reality (Id.). Further, Plaintiff points out that statements by her father and mother provide more information regarding the cognitive limitations imposed by the strokes (Id.).

Defendant contends that the ALJ carefully considered the medical and opinion evidence before concluding that Plaintiff could perform a range of light work after thoroughly considering the evidence in the record (DN 21 PageID # 4910-16). Defendant points out, contrary to Plaintiff's assertion, that the ALJ acknowledged each of Plaintiff's claimed cognitive and physical limitations resulting from the two strokes but provided thorough explanations why the evidence in the record did not substantiate Plaintiff's claims (Id.). Defendant asserts that the ALJ also reasonably evaluated Plaintiff's subjective complaints and explained why they were not supported by the medical evidence and opinions in the record (Id. at PageID # 4916-17). Further, Defendant claims that the ALJ also reasonably evaluated the statements from Plaintiff's parents (Id.).

2. Applicable Law

The RFC finding is an Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC). An Administrative Law Judge makes this finding based on a consideration of medical opinions and

all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a), 416.946(c). Medical opinions expressing functional limitations imposed by a claimant's physical or mental impairments can be generated by treating physicians or psychologists, consultative examining physicians or psychologists, state agency physicians or psychologists who reviewed the claimant's medical records, or medical experts who testify at hearings before an Administrative Law Judge. 20 C.F.R. §§ 404.1502, 404.1513(a)(2), 404.1513a(b), 404.1527, 404.1545(a)(3), 416.902, 416.913(a)(2), 416.913a(b), 416.927, 416.945(a)(3). Thus, in making the RFC finding an Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527(c), 404.1529(a), 416.927(c), 416.929(a).

As Plaintiff filed her applications prior to March 27, 2017, the rules in 20 C.F.R. §§ 404.1527 and 416.927 apply to the ALJ's assignment of weight to the medical opinions in the record. The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c). If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c).

A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. Id. §§ 404.1529(a), 416.929(a). In determining whether a

claimant suffers from debilitating pain and other symptoms, the two-part test set forth in <u>Duncan v. Sec'y of Health & Human Servs.</u>, 801 F.2d 847, 853 (6th Cir. 1986), applies. First, the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." <u>Id.</u> When, as in this case, the reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

    3. Discussion

Contrary to Plaintiff's contention, the ALJ recognized the cognitive and physical impact of her two strokes. Further, the ALJ stated sufficient reasons for finding that Plaintiff's subjective statements were not consistent with the evidence in the record.

At step two, the ALJ addressed the cognitive and physical impact of Plaintiff's strokes when the ALJ found that Plaintiff's migraine headaches, vascular insult to the brain, and neurocognitive decline were severe impairments (Tr. 19). The ALJ was not persuaded that Plaintiff suffered a severe visual impairment and provided the following explanation:

> At the first hearing, the claimant reported that she could not see much to the right and had limited vision. However, at the second hearing, the claimant admitted driving daily. (See also Exs. 45F and 48F). At the consultative examination, visual acuity was 20/50 in the right eye, 20/30 in the left eye, and 20/25 in both eyes without

> glasses or contacts. She reported no limitations in driving, and Dr. Short stated the claimant would be able to travel without difficulty. (Ex. 15F). The claimant's visits to the optometrist have also generally been routine. J. Murray Adams, O.D. examined the claimant in April and June 2017and January and May 2018. (Ex. 25F). The claimant's uncorrected visual acuity was generally in the 20/20-20/25 range. He recommended the claimant monitor her condition on a yearly basis. (Ex. 25F). These examinations do not support more than minimal limitations with work-related activities.

(Id.). The ALJ effectively explained why Plaintiff's subjective complaints regarding a visual impairment are not substantiated by the medical evidence in the record. Moreover, the ALJ's step two findings are supported by substantial evidence in the record and comport with applicable law.

At step three, the ALJ addressed whether Plaintiff's vascular insult to the brain met or medically equaled Listing 11.04 (Tr. 19-20). In the context of doing so, the ALJ commented:

> The claimant does not have a sensory or motor aphasia resulting in effective speech or communication persisting for at least 3 consecutive months after the insult; disorganization of motor function in 2 extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the insult; or marked limitation in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself.

(Tr. 20). At step five, the ALJ identified the medical evidence, medical opinions, and evidence concerning Plaintiff's daily activities that substantiated the above findings (see Tr. 22-27).

At step five, the ALJ also accurately summarized Plaintiff's subjective statements regarding the cognitive and physical impact of her two strokes (Id.). See 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. As explained above, Plaintiff's statements regarding the type and severity of her symptoms will not, taken alone, establish that she is disabled; there must be medical signs

15

and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a).

In compliance with applicable law, the ALJ examined the evidence in the record and determined that the objective medical evidence did not confirm that the conditions were of such severity that they could reasonably be expected to produce the cognitive and physical symptoms claimed by Plaintiff (Id.). See Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). Because the reported symptoms suggested cognitive and physical impairments of greater severity than could be shown by the objective medical evidence, the ALJ appropriately considered other information and factors that may be relevant to assessing Plaintiff's symptoms (Id.). See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

For example, the ALJ properly utilized Plaintiff's level of daily activity as a factor in determining the extent to which her cognitive and physical symptoms are of disabling severity (Id.). See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990). The ALJ also considered whether there were any inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's statements and the rest of the evidence in the record (Id.). See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); Horton v. Comm'r of Soc. Sec., 2:18-CV-13911, 2020 WL 1818043, at *8-9 (E.D. Mich. Feb. 14. 2020). More specifically, the ALJ recognized that as a result of the two strokes Plaintiff experienced some neurocognitive decline which can affect her ability to multitask, process complex tasks with speed and accuracy, and the ability to calculate (Tr. 22-23). The ALJ considered Plaintiff's subjective statements about the degree of neurocognitive decline but noted they were inconsistent with evidence

indicating that Plaintiff maintained the ability to drive, cared for children in her home, attended the gym for exercise, and anticipated a return to schooling (Tr. 23). Additionally, the ALJ noted that Plaintiff's subjective statements were inconsistent with her performance during Dr. Short's consultative examination and the doctor's recommendations addressing Plaintiff's neurocognitive decline (Tr. 24). The ALJ acknowledged the moderate to marked degree of limitation expressed in Dr. Mayron's opinion but she concluded that the doctor's own examination records did not support such restrictive limitations (Tr. 25).

The ALJ also acknowledged Plaintiff's reported weakness in her legs and arms bilaterally. But the ALJ noted the subjective complaint was inconsistent with other evidence in the record which indicated Plaintiff had the capacity to perform light work (Tr. 23-25). Specifically, the ALJ cited Plaintiff's own daily activities (which included exercise at the gym), the results of Dr. Short's consultative examination, Dr. Short's opinion regarding physical limitations, the opinion of Dr. Jerilynn Campbell (an independent medical expert), Dr. Mayron's opinion about Plaintiff's extremities, and the results of Dr. Mayron's examinations (Id.).

The ALJ recognized that Plaintiff reported having migraines as frequently as every day and lasting all day. But the ALJ noted that the medical evidence indicated after Depakote was prescribed Plaintiff reported the condition improved to one migraine per week and lasting approximately 30 minutes (Tr. 22-25).

For the reasons set forth above, the ALJ did recognize the cognitive and physical impact of Plaintiff's two strokes. Additionally, the ALJ stated sufficient reasons for finding that Plaintiff's subjective statements were not consistent with the evidence in the record. Further, the findings are supported by substantial evidence in the record and comport with applicable law.

17

To the extent Plaintiff takes issue with the weight assigned to the limitations expressed in Dr. Mayron's opinion, the ALJ found the treating source's own examination records do not support his restrictions (Tr. 24-25). In pertinent part the ALJ's decision reads:

> First, Dr. Mayron indicated that the claimant's visual field deficits placed her at great risk for encountering hazards. In her first visit with Dr. Mayron, the claimant reported that she had blurry vision and had been bumping into walls and other objects. However, as detailed below, Dr. Mayron's medical records consistently find nothing to support a limitation in this regard. While the undersigned has limited the claimant's exposure to hazards as a cautionary measure and to prevent further exacerbation of her condition, the undersigned is not persuaded the claimant has a severe visual impairment.
>
> . . .
>
> Dr. Mayron's examination records with the claimant do not support his opinions. More specifically, the claimant saw him in June 2017, July 2017, August 2017, November 2018, and February 2019. In June 2017, [Plaintiff] reported that she would randomly run into walls, and she saw double when looking through both eyes. [Plaintiff] stated she had trouble understanding when people speak to her and when she is trying to find words. (Ex. 48F/4). However, in the review of systems, Dr. Mayron reported "no blurring of vision." (Ex. 48F/5). There were no swelling, bruising, contusions, or abrasions noted. He noted she was "ambulating without difficulty." Sensory motor and reflex findings were normal. He noted memory of recent and remote events seemed to be appropriate. (Ex. 48F/4-7). On July 13, 2017, blurring of vision was denied. She had no swelling, bruising, contusions, or abrasions. (Ex. 48F/9). On August 22, 2017, the claimant denied any stroke-like symptoms. While the record reported that she was being treated for double vision, muscle weakness, and easy bruising, the record indicates there was no blurring of vision, no arthralgias or myalgias, and no swelling, bruising, contusions, or abrasions. Her psychiatric review of systems stated, "no confusion." (Ex. 48F/13). The record indicated the claimant was "ambulating without difficulty." Sensory, motor, and reflex findings were normal. Memory of recent and remote events seemed appropriate. Language was

> normal and naming of objects was normal. The patient's knowledge of the past medical history was appropriate and vocabulary was normal. (Ex. 48F/13). She was able to heel, toe, and tandem walk without difficulty. (Ex. 48F/14).

(Id.). The ALJ's explanation for discounting the opinions expressed by Dr. Mayron are supported by substantial evidence in the record and comport with applicable law. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

Plaintiff also seems to argue that all the normal examination findings in Dr. Mayron's treatment notes are not actually reflective of her condition and that it is "very common for physicians" to not "check[] any of the boxes fully as intended" (DN 15-1 PageID # 4738). The Court declines to address this argument which is speculative at best and has no basis in the record. Moreover, as explained above, the ALJ discounted Dr. Mayron's opinions based on what is set forth in the doctor's treatment notes which are in the record.

For the reasons set forth above, Plaintiff is not entitled to relief on his two challenges to the ALJ's RFC determination set forth in Finding No. 5. Additionally, the ALJ's RFC determination is supported by substantial evidence in the record.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ

followed the applicable law.  (Id.).  After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

October 1, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:        Counsel